UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| RICHARD LAWRENCE,<br><br>             Plaintiff,<br><br>v.<br><br>CORNING NATURAL GAS HOLDING CORPORATION, HENRY B. COOK, JR, MICHAEL GERMAN, TED W. GIBSON, ROBERT B. JOHNSTON, JOSEPH P. MIRABITO, WILLIAM MIRABITO, GEORGE J. WELCH, and JOHN B. WILLIAMSON, III,<br><br>             Defendants. | Case No._____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

---

Plaintiff Richard Lawrence ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This action is brought by Plaintiff against Corning Natural Gas Holding Corporation ("Corning" or "the "Company") and the members of Corning's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Corning will be acquired by affiliates of

Argo Infrastructure Partners, LP ("Argo") through Argo's subsidiaries ACP Crotona Corp. ("Parent") and ACP Crotona Merger Sub Corp. ("Merger Sub") (the "Proposed Transaction").

2.     On January 13, 2021, Corning issued a press release announcing that it had entered into an Agreement and Plan of Merger dated January 12, 2021 (the "Merger Agreement"). Under the terms of the Merger Agreement, Corning shareholders will receive $24.75 in cash for each Corning share they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $150 million.

3.     On April 22, 2021, Corning filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Corning stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Janney Montgomery Scott LLC ("Janney"); (ii) potential conflicts of interest faced by Company insiders; and (iii) the background of the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Corning stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4.     In short, unless remedied, Corning's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Moreover, Corning's common stock trades on the OTCQX Market, which is headquartered in this District, rendering venue in this District appropriate.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Corning.

9. Defendant Corning is a New York corporation, with its principal executive offices located at 330 West William Street, Corning, New York 14830. Corning provides natural gas and electric service to customers in New York and Pennsylvania through its operating subsidiaries Corning Natural Gas Corporation ("Corning Gas" or the "Gas Company"), Pike County Light & Power Company ("Pike"), and Leatherstocking Gas Company, LLC ("Leatherstocking Gas"). Corning's shares trade on the OTCQX Market under the ticker symbol "CNIG."

10. Defendant Henry B. Cook, Jr. ("Cook") is Chairman of the Board and has been a director of the Company since May 2007.

11. Defendant Michael I. German ("German") has been President, Chief Executive Officer ("CEO"), and a director of the Company since 2013.

12. Defendant Ted W. Gibson ("Gibson") has been a director of the Company since November 2006.

13. Defendant Robert B. Johnston ("Johnston") has been a director of the Company since July 2014.

14. Defendant Joseph P. Mirabito ("Joseph Mirabito") has been a director of the Company since November 2010.

15. Defendant William Mirabito ("William Mirabito") has been a director of the Company since November 2010.

16. Defendant George J. Welch ("Welch") has been a director of the Company since May 2007.

17. Defendant John B. Williamson, III ("Williamson") has been a director of the Company since November 2010. Defendant Williamson has been a director of Corning Gas since 2010.

18. Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19. Argo is an independent infrastructure investment firm with a focus on utilities and other long duration infrastructure assets. Headquartered in New York, Argo's team has extensive operational and financial experience in regulated utilities, energy, renewables, and transportation.

Argo currently manages in excess of $3.7 billion in equity capital deployed in 11 infrastructure assets and businesses in North America. Its managed assets include four contracted power generation assets, three utilities, two electric transmission systems and one energy storage network. Its asset portfolio includes: 3 utilities serving over 600,000 customers; 2 gigawatts of power generation; and 1 gigawatt of electric transmission and energy storage.

20. Parent is a Delaware corporation formed by Argo.

21. Merger Sub is a New York corporation that is wholly owned by Parent.

### SUBSTANTIVE ALLEGATIONS

**Background of the Company**

22. Corning was incorporated in New York in July 2013 to serve as a holding company for the Gas Company and its dormant subsidiary Corning Natural Gas Appliance Corporation (the "Appliance Company"), Pike, Leatherstocking Gas, and Leatherstocking Pipeline Company, LLC ("Leatherstocking Pipeline"). The Holding Company also owns 50% of Leatherstocking Gas of New York, Inc. ("Leatherstocking NY").

23. The Company's primary business, through its subsidiaries Corning Gas, Pike and the Leatherstocking Companies, is natural gas and electric distribution. Corning Gas serves approximately 15,000 residential, commercial, industrial and municipal customers in the Corning, Hammondsport and Virgil, New York, areas and two other gas utilities which serve the Elmira and Bath, New York, areas. It is franchised to supply gas service in all of the political subdivisions in which it operates. The Gas Company is under the jurisdiction of the New York Public Service Commission ("NYPSC") which oversees and sets rates for New York gas distribution companies. In addition, the Gas Company has contracts with Corning Incorporated and Woodhull Municipal Gas Company, a small local utility, to provide maintenance service on their gas lines. Pike is an

electric and gas utility regulated by the Pennsylvania Public Utility Commission ("PAPUC"). Pike provides electric service to approximately 4,800 customers in the Townships of Westfall, Milford and the northern part of Dingman and in the Boroughs of Milford and Matamoras. Pike provides natural gas service to 1,200 customers in Westfall Township and the Borough of Matamoras. All of these communities are located in Pike County, Pennsylvania. Additionally, Leatherstocking Gas is also regulated by the PAPUC and distributes gas in Susquehanna and Bradford Counties, Pennsylvania. Leatherstocking Pipeline, an unregulated company, has served one customer in Lawton, Pennsylvania and has had no revenues since 2018. Leatherstocking NY has an application pending before the NYPSC for authority to provide gas distribution services in Broome County, New York.

24. On February 10, 2021, the Company announced its fourth quarter 2020 financial results. Highlights for the quarter included total utility operating revenues of $8.32 million, compared to $8.16 million for the prior year's fourth quarter, and total cost of sales of $2.06 million, down from $2.16 million in the corresponding quarter of 2019.

**The Proposed Transaction**

25. On January 13, 2021, Corning issued a press release announcing the Proposed Transaction, which states, in relevant part:

> CORNING, N.Y., Jan. 13, 2021 -- Corning Natural Gas Holding Corporation's (Corning or the Company) Board of Directors announced they have reached an agreement with an affiliate of Argo Infrastructure Partners, LP (Argo), an independent infrastructure investment manager, in an acquisition worth approximately $150 million. Argo has agreed to acquire all the shares outstanding of Corning common stock (OTCQX: CNIG) for $24.75/share.
>
> The agreement is structured as a merger and provides for a 45 day "go-shop" period and will require Corning to suspend its dividend reinvestment program (DRP). Upon the completion of the merger, Corning expects to maintain its leadership team and employees with no changes in operations and customer service. Corning and

Argo expect to complete the transaction in the second half of 2021, but there can be no guarantee that the merger will be completed when expected.

Mike German, Corning Natural Gas Holding Company CEO and President noted, "This merger will allow Corning's three subsidiaries to access long-term capital to invest more robustly in safety, reliability, and expansion of service to the benefit of our customers and the communities we serve."  Richard Klapow, Managing Director for Argo added, "Argo has a substantial track record as a long-term investor in the energy and utilities sector and is excited about the opportunity to invest in Corning.  We were attracted to Corning's high quality asset base, leadership, and customer commitment.  Our team's decades of experience managing gas and electric utility investments, combined with our access to long-term capital, places us in an ideal position to support Corning's ongoing infrastructure investment program and management's efforts in achieving its customer service goals.  We look forward to working with management and other stakeholders to ensure Corning's continued success."

The transaction is subject to, among other customary closing conditions, the approvals of the New York Public Service Commission and the Pennsylvania Public Utility Commission, as well as Corning's shareholders.  Janney Montgomery Scott is serving as exclusive financial advisor to Corning and provided a fairness opinion to the company's board of directors.

**Insiders' Interests in the Proposed Transaction**

26.     Corning insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Corning.

27.     Notably, before Corning entered into the merger agreement, each member of the Board, except defendant German, received 450 restricted shares of Corning common stock.  Upon consummation of the Proposed Transaction, the applicable restrictions will lapse and the directors will be entitled to receive the Merger Consideration for their restricted shares.

28.     The Board members hold the following restricted shares entitling them to receive the Merger Consideration upon completion of the merger: defendant Cook, 21,496 restricted shares entitling him to receive $532,026; defendant Gibson, 21,540 restricted shares entitling him

to receive $533,115; defendant Johnston, 16,650 restricted shares entitling him to receive $412,088; each of defendants Joseph Mirabito, William Mirabito and Williamson, 17,696 restricted shares entitling them to receive $437,976; and defendant Welch, 21,450 restricted shares entitling him to receive $530,888.

29. Moreover, Corning insiders stand to reap substantial financial benefits by exchanging their Company shares for the Merger Consideration. The following table summarizes the number and category of Company shares held by Company insiders:

| Name and Address (1) | Common Stock (2) | | Preferred Stock | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | Series A | | Series B | | Series C | |
| | Shares | Percent | Shares | Percent | Shares | Percent | Shares | Percent |
| **Directors** | | | | | | | | |
| Henry B. Cook, Jr. (5) | 41,595 | 1.4% | — | — | — | — | — | — |
| Michael I. German (6) | 570,675 | 18.5% | 5,129 | 2.0% | 57,936 | 23.7% | — | — |
| Ted W. Gibson (7) | 157,489 | 5.1% | 43,047 | 16.5% | — | — | 51,000 | 28.3% |
| Robert B. Johnston (8) | 18,980 | 0.6% | 15,000 | 5.8% | — | — | 10,000 | 5.6% |
| Joseph P. Mirabito (9) | 66,528 | 2.2% | 10,900 | 4.2% | 102 | <0.1% | — | — |
| William Mirabito (10) | 75,689 | 2.5% | 17,868 | 6.9% | 1,039 | 0.4% | 4,000 | 2.2% |
| George J. Welch (11) | 27,708 | 0.9% | 10,600 | 4.1% | 912 | 0.4% | — | — |
| John B. Williamson III (12) | 22,464 | 0.7% | 1,052 | 0.4% | 1,416 | 0.6% | — | — |
| **Officers** | | | | | | | | |
| Matthew J. Cook (13) | 2,169 | 0.1% | — | — | — | — | — | — |
| Russell S. Miller (14) | 2,016 | 0.1% | — | — | — | — | — | — |
| Charles A. Lenns (15) | 14,500 | 0.5% | — | — | — | — | — | — |

30. In addition, if they are terminated in connection with the Proposed Transaction, Corning insiders stand to receive substantial cash severance payments, as set forth in the following table:

| Name and Title | Cash | Equity (1) | Total |
|---|---|---|---|
| Michael I. German (2)<br>Chief Executive Officer and President | $572,220 | — | $572,220 |
| Charles A. Lenns (3)(4)<br>Chief Financial Officer and Treasurer | 243,987 | $193,875 | 437,862 |
| Matthew J. Cook (3)<br>Vice President — Operations | 162,463 | — | 162,463 |
| Russell S. Miller (3)<br>Vice President — Gas Supply and Marketing | 153,685 | — | 153,685 |

**The Proxy Statement Contains Material Misstatements and Omissions**

31. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Corning's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

32. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Janney; (ii) potential conflicts of interest faced by Company insiders; and (iii) the background of the Proposed Transaction.

***Material Omissions Concerning the Company's Financial Projections and Janney's Financial Analyses***

33. The Proxy Statement omits material information regarding the Company's financial projections.

34. For example, in connection with its *Discounted Cash Flow Analysis*, Janney utilized the Company's projections for the fiscal years ended 2021–2024 and more specifically the Company's unlevered free cash flows, defined as operating income less taxes, plus depreciation and amortization expenses, less capital expenditures, less change in net working capital. The Proxy Statement, however, fails to disclose the Company's unlevered free cash flows and the line items underlying the Company's unlevered free cash flows.

35. Additionally, the Proxy Statement omits material information regarding Janney's financial analyses.

36. The Proxy Statement describes Janney's fairness opinion and the various valuation analyses they performed in support of its opinion. However, the description of Janney's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Corning's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Janney's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

37. With respect to Janney's *Comparable Public Trading Multiples Analysis* and *Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies and transactions observed in the analyses.

38. With respect to Janney's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the unlevered free cash flows used in the analysis; (ii) identification and quantification of the financial metric that Enterprise Value/EBITDA exit multiples of 11.6x to 12.6x was applied to in order to derive the terminal value; (iii) quantification of the individual inputs and assumptions underlying the discount rates ranging from 9.2% to 11.2%; (iv) the Company's net debt; and (v) the Company's common stock outstanding on a fully diluted basis.

39. Without such undisclosed information, Corning stockholders cannot evaluate for themselves whether the financial analyses performed by Janney were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Janney's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

40. The omission of this material information renders the statements in the "Financial Projections" and "Opinion of Our Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

41. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Corning insiders.

42. The Proxy Statement sets forth, "Argo has informed us that it currently intends to retain our senior management team following completion of the merger." Proxy Statement at 39. Yet, the Proxy Statement fails to disclose the details of the employment and retention-related discussions and negotiations that occurred between Argo and Corning's officers and directors, including who participated in all such communications, when they occurred and their content.

43. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

44. The omission of this information renders the statements in the "Background of the Merger" and "Interests of Our Directors and Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning the Background of the Proposed Transaction**

45. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

46. The Proxy Statement sets forth that in connection with the go-shop period, the Company executed non-disclosure agreements with two parties and gave them access to due diligence materials. The Proxy Statement fails, however, to disclose the terms of the non-disclosure agreements, including whether they included standstill provisions or "don't-ask-don't-waive" standstill provisions that are presently precluding these parties from submitting a topping bid for the Company.

47. Any reasonable Corning stockholder would deem the fact that the most likely topping bidders for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

48. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

49. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Corning will be unable to make a sufficiently informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

50. Plaintiff repeats all previous allegations as if set forth in full.

51. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

52. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy

Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Janney, potential conflicts of interest faced by Company insiders, and the background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

53. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

54. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

55. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

56. Plaintiff repeats all previous allegations as if set forth in full.

57. The Individual Defendants acted as controlling persons of Corning within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Corning, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

58. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

60. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

61. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the

Exchange Act. As a direct and proximate result of defendants' conduct, Corning stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Corning, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Corning stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 11, 2021                                      **WEISSLAW LLP**

                                                         By _/s/ Richard A. Acocelli_
                                                            Richard A. Acocelli

                            1500 Broadway, 16th Floor
                            New York, New York 10036
                            Tel: (212) 682-3025
                            Fax: (212) 682-3010
                            Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*